IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TAMIKA BRUCE,

           Petitioner,

v.                                  CIVIL ACTION NO.  2:09-cv-00892
                                        (Criminal No. 2:08-cr-00121)

UNITED STATES OF AMERICA,

           Respondent.

**MEMORANDUM OPINION AND ORDER**

Petitioner Tamika Bruce, *pro se*, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. [Docket 46 & 51.][1] On August 4, 2009, this Court referred Petitioner's habeas application to Magistrate Judge Mary E. Stanley for proposed findings of fact and a recommendation ("PF&R") (Docket 48.)  On September 22, 2010, Magistrate Judge Stanley issued a PF&R (Docket 67) recommending the dismissal of Petitioner's application with prejudice because her application lacks merit. On November 10, 2010, Petitioner filed timely objections to the PF&R. [Docket 71], which she supplemented on August 24, 2012, through an untimely letter to the Court.  For the reasons set forth herein, the Court **ADOPTS** Magistrate Judge Stanley's proposed findings and recommendation.

---

[1] On September 16, 2009, Magistrate Stanley directed Petitioner to complete a form § 2255, incorporating the grounds for relief set forth in her original application [Docket 46] by reference. (Docket 50).  On September 29, 2009, Petitioner filed her form § 2255. [Docket 51.]

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a petitioner "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## I. OBJECTIONS TO THE PF&R

*A.  Timeliness of Petitioner's Objections*

As a preliminary matter, the Court must first determine whether the Petitioner's objections were timely filed. Objections to the PF&R in this case were due on October 26, 2010. It appears from the dates assigned by prison officials on the envelopes containing Petitioner's objections that she first attempted to mail her objections on October 25, 2010, and then again on October 26, 2010. (Docket 71 at 13-17). The address label for each of these mailings is typed or computer-generated and reads: "Clerk US Court, 300 Virginia Street E, Charleston, WV - 25301, United States." Both mailings bear a printed postal label stating "Return to Sender" for "insufficient address." *Id*. On November 5, 2010, Petitioner mailed her objections a third time, this time with the handwritten address: "Robert C. Byrd, United States Courthouse, 300 Virginia Street East, rm 2400, Charleston, West Virginia 25301." (*Id*.) This third effort was successful.

Where it appears to the Court that Petitioner provided her written objections to prison officials prior to the October 26, 2010, deadline, and where it appears Petitioner was reasonably

diligent in her attempts to comply with the filing deadlines prescribed by the Court, the Court **FINDS** that Petitioner's objections were timely filed. Fed. R. Civ. P. 72(b); *Thompson v. Raspberry*, 993 F.2d 513 (5th Cir.1993)(explaining that for purposes of rule specifying time during which appeal must be taken from magistrate's recommended disposition of prisoner petition, pro se prisoner's written objections to magistrate's report and recommendations must be deemed filed and served at moment they are forwarded to prison officials for delivery to district court, provided prisoner has done all that he or she can reasonably do to insure documents are received by clerk of court in timely manner).

  B. *Summary of Petitioner's Objections*

The Court now turns to the substance of Petitioner's objections to the PF&R. The essence of Petitioner's claims is that her lawyer, in the course of his representation of Petitioner in connection with her guilty plea and sentencing on a drug charge, made a variety of errors. Petitioner's objections are fairly summarized as follows:

  (1) *First Objection*

In the PF&R, the Magistrate Judge Stanley proposes that the Court find that Petitioner "has not alleged that 'but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial ,' as required by *Fields*." (Docket 67 at 5.) Magistrate Judge Stanley also proposes that the Court find that Petitioner "failed to show that she suffered any prejudice because she received the minimum sentence possible for her guilty plea." (Docket 67 at 5-6.)

Petitioner objects to these proposed findings claiming that "she would not have pleaded guilty and would have insisted on going to trial" had her attorney followed her instructions during

an un-transcribed pause in the plea hearing where, allegedly, Petitioner privately instructed her attorney to advise the court that the Stipulation of Facts was not true. (Docket 71 at 3.) Petitioner asserts that her lawyer advised her to go through with the guilty plea anyway even though she had just told him the Stipulation of Facts was not true. (*Id.*) Petitioner also contends that had she gone to trial she could have pursued an entrapment defense and "could have had a 50/50 chance of receiving no time at all." (Docket 71 at 4.);

   *(2) Second Objection*

In the PF&R, the Magistrate Judge proposes the Court find that Petitioner "failed to show that her attorney revealed confidential communications to anyone." (Docket 67 at 7.)

Petitioner claims that the Magistrate Judge misconstrued the facts concerning this allegation and offers additional facts for clarification. (Docket 71 at 4.)

   *(3) Third Objection*

In the PF&R, the Magistrate Judge proposes that the Court find that Petitioner's claim that the guilty plea hearing transcript omits several sentences is without foundation.

Petitioner, partially reiterating her first objection, claims that the Magistrate Judge's proposed finding is erroneous because the transcript omits private discussions that occurred at the guilty plea hearing between Petitioner and her counsel (*Id.* at 5.) Petitioner also claims that the transcript does not reflect her alleged statement to the sentencing judge, United States District Court Chief Judge Joseph Robert Goodwin, that "I don't believe in my plea, I believe in my lawyer and my lawyer believes in my plea." (*Id.*) She states "That statement somehow has been omitted from the transcript." (*Id.*)

      *(4)      Fourth Objection*

In the PF&R, the Magistrate Judge proposes that the Court find that Petitioner "has shown no extraordinary circumstances, that the truth of her sworn statements made during the Rule 11 colloquy are conclusively established, and that [Petitioner's] allegations in her § 2255 motion contradict the sworn statements." (Docket 67 at 13.) The Magistrate Judge also proposes that the Court find that Petitioner "waived her right to pursue a collateral attack except as to alleged ineffective assistance of counsel, that her attorney did not induce her enter a guilty plea; that her sworn statements at the plea hearing establish that her guilty plea was entered knowingly and voluntarily, and that [Petitioner] was not denied effective assistance of counsel in relation to the guilty plea." (*Id.*)

Petitioner objects to these proposed findings because: a) her attorney failed to provide her "all the information to make an educated decision" whether to plead guilty and, consequently, her guilty plea was defective; b) her attorney did not give her proper advice regarding relevant conduct issues and a firearm enhancement; c) her attorney failed to show her the stipulation of facts prior to the plea hearing; and d) she told her attorney during the plea hearing that the facts in the stipulation "were not facts"; but her attorney "induced" her to plead guilty anyway. (Docket 71 at 7.) Petitioner also claims that because of these errors, the Court should find that her collateral attack waiver is invalid. (*Id.* at 6-8.)

      *(5)      Fifth Objection*

Finally, in the PF&R, the Magistrate Judge proposes that the Court find that Petitioner "failed to show that her attorney's performance resulted in any prejudice to her." (Docket 67 at 15.)

Petitioner objects to this proposed finding on the basis that her counsel made various sentencing guideline errors. (Docket 71 at 8.) She contends that pursuant to USSG § 5G1.1(b), she was not subject to the 120-month, mandatory minimum sentence "so her sentence should have been a guideline sentence to begin with." (*Id.* at 8.) She offers a variety of alternative sentencing guideline calculations that she claims are appropriate to her case. (*Id.* at 10-11.)

In her PF&R, Magistrate Judge Stanley recommends the Court dismiss Petitioner's § 2255 application on the grounds that each of Petitioner's contentions lack merit. [Docket 67].

## II. FACTUAL AND PROCEDURAL BACKGROUND

The full factual and procedural history of this case and Petitioner's related criminal case (Criminal No. 2:08-00121) is set forth in the PF&R, yet the events that occurred during Petitioner's guilty plea and sentencing hearings merit fuller development in light of the issues raised by Petitioner.

Petitioner was indicted on charges relating to possession with intent to distribute more than five grams of crack cocaine (Count One), fifty grams or more of crack cocaine (Count Two), cocaine (Count Three) and marijuana (Count Four). (Docket 5 at 1-4.) Pursuant to a written plea agreement, Petitioner pleaded guilty to Count Two of the Indictment. (Docket at 59-1.) The plea agreement contained a written Stipulation of Facts that bears the Petitioner's signature, as well as the signatures of her counsel, Trent A. Redman, and the Assistant United States Attorney. (Criminal No. 2:08-cr-00121, Docket 30 at 9-10.) The plea agreement also contained a waiver of Petitioner's appellate and collateral attack rights. (*Id*. ¶ 11.) This waiver permitted the parties to appeal the Court's sentencing guideline calculation in the event that it differed from that the parties stipulated to in the

plea agreement. (*Id.* ¶¶10-11) Petitioner also waived her right to challenge her guilty plea, her conviction, and her sentence in any collateral attack except on the basis of a claim of ineffective assistance of counsel. (*Id*. ¶10.)

During the plea hearing, Petitioner, having been sworn under oath to answer the Court's questions truthfully, advised the Court, *inter alia*, that she was fully satisfied with her attorney, that her attorney had answered all of her questions about how to best proceed in the matter, that her lawyer carefully reviewed the plea agreement with her, and that she wanted the Court to accept the agreement. (Docket 59-1 at 3, 8.) The Court reviewed in detail with the Petitioner the nature of the charges and the consequences of pleading guilty, including advisement that her guilty plea would expose her to a mandatory minimum sentence of ten years. (*Id*. at 10-12, 18-24 .) The Court also reviewed the written stipulation of facts and permitted Petitioner an opportunity to discuss the stipulation with her attorney. (*Id*. at 13-15.) Following Petitioner's discussion with her counsel, Petitioner thrice advised the Court that the facts contained in the stipulation were true. (*Id.* at 14-17.) The Court specifically advised Petitioner that she was under no pressure to plead guilty and was not being coerced, intimidated or talked into pleading guilty. (*Id*. at 14.) Petitioner assured the Court that she was acting freely and voluntarily, that it was her own idea to plead guilty and that she had no second thoughts. (*Id*. at 25.) Petitioner expressly denied that anyone forced, coerced, or talked her into pleading guilty against her will. (*Id*. at 24-25.) Following the Assistant United States Attorney's proffer of evidence—including a statement that the total amount of cocaine base taken from Petitioner's house was 74.33 grams and that a .32 caliber semi-automatic handgun had been found in the Petitioner's bedroom— Petitioner advised the Court that the proffer of evidence was true. (*Id.* at 17.)

Following the preparation of a pre-sentence investigation report, the Court conducted a sentencing hearing. (*Id.* at 29-45.) At no time in between her guilty plea and sentencing hearings did Petitioner ever challenge the voluntariness of her guilty plea. At no time during her sentencing hearing did Petitioner advise the Court that the stipulation of facts was in error or that her counsel was unsatisfactory. When the Court gave Petitioner an opportunity to speak, Petitioner apologized for her actions, stated that she was embarrassed by the things she had done, and asked the Court for mercy. (*Id.* at 34.) The Court sentenced Petitioner to 120 months' imprisonment, the minimum allowable sentence under 21 U.S.C. § 841(b)(1). (*Id.* at 38.) Final judgment was entered on October 23, 2008. (Criminal No. 2:08-cr-00121, Docket 39.) Petitioner did not appeal her conviction or sentence.

Petitioner filed her timely application to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (hereinafter "§ 2255 motion" or "motion") on August 4, 2009. (Docket 46). The United States filed its response to Petitioner's motion (Docket 59) and Petitioner filed her reply to the United States' response (Docket 62.)

### III. DISCUSSION

Defendant makes five objections, all of which concern various allegations that her defense attorney, Trent A. Redman, rendered constitutionally deficient legal representation of Petitioner in connection with Petitioner's guilty plea and sentencing on a federal crack cocaine charge.

When a movant claims ineffective assistance of counsel as a basis for seeking relief under § 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In *Strickland*, the Court adopted

a two-pronged test for determining whether a defendant received adequate assistance of counsel. *Id.* The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. 466 U.S. at 687–691. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. *Id.* at 688–89.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.,* 460 U.S. at 690. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir.1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. *Murray v. Carrier*, 477 U.S. 478, 479 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") Thus, the movant must show (1) that his attorney's performance was constitutionally inadequate, *i.e.*, that he committed errors so serious that his performance "fell below an objective

standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. *Strickland*, 466 U.S. at 687–88; *Fitzgerald v. Thompson*, 943 F.2d. 463 (4th Cir. 1991).

It is well-settled that "[w]hen counsel has advised the defendant to plead guilty, a defendant who has heeded such advice may not subsequently collaterally attack the voluntariness of the guilty plea, so long as counsel's advice was 'within the range of competence demanded of attorneys in criminal cases.'" *Brewer v. Peyton*, 431 F.2d 1371, 1374-75 (4th Cir. 1970) (citing *McMann v. Richardson*, 397 U.S. 759 (1970)). In the absence of extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.' " *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted).

  *A.*  *First Objection*

Petitioner's first objection assigns error to the PF&R's statement that "Defendant has not alleged that 'but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial,' as required by [*Fields v. Attorney General*, 959 F.2d 1290 (4th Cir. 1992)]." (Docket 67 at 5.) Petitioner states that her attorney had told her "we can walk out now, but you have to sign something saying it was your idea, because they will end up giving you twenty-five years," which "led her to believe that not signing the plea agreement was a bad idea." (Docket 71 at 3); (*see also* Docket 46 at 5.) She states that she "warned counsel during the plea hearing that the [S]tipulation of Facts presented were not facts" and her lawyer advised her against informing the Court of this. (*Id.* at 3.) She claims she urged her attorney to "go against" the Stipulation of Facts." (*Id.* at 5.) She

argues that her counsel should have proceeded to trial on her theory that she was "entrapped" and " 'wooed' into storing narcotic drugs found in residence." (*Id.* at 4.) She claims that she is prejudiced because her private conversation with her attorney during the plea hearing was not transcribed by the court reporter and, thus, she "is left without vital evidence to refute" contradictory evidence in the record. (*Id*. at 3.) She also claims that she told Chief Judge Goodwin during the plea hearing, "I don't believe in my plea, I believe in my lawyer and my lawyer believes in my plea." (*Id.* at 5.)

Petitioner has not demonstrated that her attorney's legal representation was constitutionally ineffective or that extraordinary circumstances exist that justify crediting the factual assertions contained in her § 2255 motion. Petitioner's newly-minted, post-conviction assertions that Mr. Redman ignored her purported instruction to "go against" the Stipulation of Facts and take the case to trial lack credibility for the simple reason that they are thoroughly contradicted by the record. To begin, Mr. Redman refutes Petitioner's assertions in his affidavit. (Docket 59-1 at 43-44.) Among other things, Mr. Redman states under oath that Petitioner "knowingly and voluntarily signed a 'Statement of Facts" after reading and discussing the same with counsel." (Docket 59-1 at 44.) Further, in the course of his representation of Petitioner, Mr. Redman states, among other things, that he met with Petitioner on several different occasions and explained her legal options; that it was Petitioner who made the choice not to go to trial; and that he "allowed [Petitioner] to make her own decisions per her own words, as the record herein reflects." (*Id.* at 44.)

Next, the record of the plea hearing clearly contradicts Petitioner's assertions. For example, the presiding judge, Chief Judge Goodwin, asked Petitioner to describe what she did that made her guilty of the charge of possession with the intent to distribute fifty grams or more of cocaine base

in violation of 21 U.S.C. § 841(a)(1). (Docket 59-1.) The transcript reflects that, although the Petitioner initially balked at accepting responsibility for the amount of drugs charged, she, after Judge Goodwin's careful review with her of the Stipulation of Facts and after Judge Goodwin gave Petitioner some time to consult privately with her attorney, unequivocally acknowledged her guilt as to the offense charged. (*Id.* at 59-1.) Indeed, Judge Goodwin made a point of advising Petitioner that she should not plead guilty if she was not in fact guilty. (*Id.*) Judge Goodwin told Petitioner that she was "under no pressure and you are not to be forced, coerced, intimidated, or even talked into entering a plea of guilty or a stipulation of facts unless you're, in fact, guilty." (*Id.* at 14.) Further, the Assistant United States Attorney placed on the record a thorough proffer of Petitioner's offense and relevant conduct—including a statement that the amount of cocaine base attributable to Petitioner was 74.33 grams. *(Id.* at 15-17.) Thereafter, in response to Judge Goodwin's question, Petitioner stated that what the Assistant United States Attorney had proffered as the facts was in fact true. (*Id.* at 17.) Additionally, Judge Goodwin informed Petitioner that the Stipulation of Facts was binding and Petitioner acknowledged that she understood that. (*Id*. at 22.) In addition to being advised of numerous constitutional rights, Petitioner acknowledged that she understood the nature of the charge and the consequences of pleading guilty. (*Id*.) Petitioner also acknowledged that she had adequate time to discuss her case with her attorney and was satisfied with the legal advice her attorney had given. (*Id*. at 3-4.)

Petitioner had ample opportunity during the plea hearing to have advised Judge Goodwin of the substance of what she now claims she had purportedly discussed privately with her counsel during the pause in the proceedings (*i.e.*, she did not want to go through with the plea because the stipulation of facts was allegedly false), but she did not. That choice will not now be second-guessed

based on the record before the Court. Further justifying the Court's rejection of Petitioner's claims is her utterly incredible statement that she told Judge Goodwin "I don't believe in my plea, I believe in my lawyer and my lawyer believes in my plea." (Docket 62 at 5.) No such statement, as Petitioner acknowledges, appears in the guilty plea hearing transcript. The falsity of Petitioner's allegation is certain because had Petitioner actually advised Judge Goodwin that Petitioner didn't "believe in [her] plea," the transcript would surely contain an extended discussion on the point and Judge Goodwin almost certainly would have rejected the plea agreement in the absence of a wholesale retraction of the statement by Petitioner. The fact that no such statement or discussion is contained in the official certified transcript is *prima facie* evidence that Petitioner made no such statement. *See* 28 U.S.C. § 753(b) ("The transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had."). " 'Mere assertions that the record is wrong are not sufficient to overcome this presumption.' " *United States v. Riggs*, 2:10CR00002-004, 2012 WL 10287 (W.D. Va. Jan. 3, 2012) (quoting *Williams v. Sprint/United Mgmt. Co.*, No. 03–2200–JWL, 2008 WL 5377839, at *1 (D. Kan. Dec. 19, 2008).

Third, following her guilty plea, Petitioner advised the probation officer in connection with the preparation of Petitioner's presentence investigation report that she admitted the conduct that comprised the offense of conviction as stated in the Stipulation of Facts and expressly stated that she was storing crack cocaine at her residence and intended to sell some of it. (Docket 42 ¶¶ 28-29.)

There is no evidence in the record to substantiate Petitioner's assertion that she was coerced or "induced" by her attorney into pleading guilty. Her attorney flatly refutes Petitioner's story. To the extent that Mr. Redman privately counseled Petitioner to go through with the guilty plea hearing

-13-

rather than take the case to trial—advice given after Mr. Redman had successfully negotiated a favorable plea agreement with the government based on a factual stipulation Petitioner admitted was true—was well within the bounds of effective and ethical legal representation. Accordingly, the Court **OVERRULES** Petitioner's objection and **ADOPTS** Magistrate Judge Stanley's proposed finding that Petitioner failed to show that her attorney committed errors that caused her to plead guilty and not go to trial.[2]

B.   *Second Objection*

In her second objection Petitioner argues that the Magistrate Judge erred in recommending that the Court find "that Defendant has failed to show that her attorney revealed confidential communications to anyone. The mere fact that a detective mentioned 'Taco' is no proof that her attorney revealed information.'" (Docket 67 at 7.) Petitioner argued in her § 2255 motion that her attorney had necessarily revealed confidential information to the Government because "[in t]he first debriefing, the detective said Taco (a supposedly known drug dealer) had moved out of town because I caught my charge. . . . I had told my attorney that Paul Woods left town when I caught my charge." (Docket 62 at 9.) Later, in her Reply (Docket 62), Petitioner re-fashions her characterization of this

---

[2] The Court notes that the PF&R also proposes that the Court find that Petitioner did not suffer any prejudice "because she received the minimum sentence possible for her guilty plea." (Docket 67 at 5.) The Court declines to accept this finding to the extent it encompassed Petitioner's argument that she would have gone to trial but for her lawyer's alleged errors in advising her to plead guilty and, if acquitted, would have received no sentence of imprisonment. Assuming unreasonable errors by her counsel were made, Petitioner would have suffered prejudice had she otherwise gone to trial and been acquitted. For the reasons set forth herein, however, the Court does not find counsel made unreasonable errors and thus, this finding, if erroneous, does not impact the judgment in this case. To the extent this finding was intended to be limited to Petitioner's argument that she was prejudiced by her lawyer's mistakes with respect to sentencing enhancements, the finding is correct because of the fact that Petitioner was sentenced to the 120-month minimum mandatory statutory sentence and any sentencing guideline enhancements had no effect on her ultimate sentence.

statement. She stated that the detective actually said, "[D]on't lie to me, your attorney already told me that Taco moved out of town when you were charged." (Docket 71 at 4 (emphasis added).)

As Magistrate Judge Stanley properly found, these allegations are entirely insufficient. Assuming Mr. Redman made the alleged disclosure to law enforcement in connection with Petitioner's plea agreement or debriefing, Petitioner fails to demonstrate that the disclosure violated an attorney-client confidence or why the disclosure would not have been an exercise of reasonable professional judgment. To the extent that Petitioner claims that Mr. Redman mis-communicated information during his interactions with law enforcement, that is, "he mixed it up," this claim also fails since "mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance." *Murray v. Carrier*, 477 U.S. at 479.

Accordingly, the Court **OVERRULES** Petitioner's objection and **ADOPTS** Magistrate Judge Stanley's finding that Petitioner failed to show that Mr. Redman improperly revealed confidential information.

*C.     Third Objection*

Next, Petitioner objects to the Magistrate Judge's finding that "Defendant's allegations that the transcript of her guilty plea hearing omits several sentences is without foundation." (Docket 67 at 8.) As the Magistrate Judge correctly noted, private communications during court proceedings between defendants and their counsel are not intended to be overheard much less transcribed. (*Id.*) Petitioner had ample opportunity to voice any concerns about the Stipulation of Facts to the Court, but did not. Further, as noted *supra*, Petitioner maintains without any evidentiary support that she told Chief Judge Goodwin at her guilty plea hearing, "I don't believe in my plea, I believe in my

lawyer and my lawyer believed in my plea." (Docket 71 at 5.) The Court does not credit this assertion for the reasons stated above.

Accordingly, the Court **OVERRULES** Petitioner's objection and **ADOPTS** Magistrate Judge Stanley's finding that Petitioner's allegations are without foundation.

*D.     Fourth Objection*

Petitioner's fourth objection is that the Magistrate Judge improperly found that Petitioner's guilty plea was intelligently and voluntarily made. (Docket 71 at 6-8.) She argues that the truth of her statements during the guilty plea colloquy should not be deemed conclusively established because there are "extraordinary circumstances." (*Id.*) She claims that Mr. Redman failed to adequately explain the Stipulation of Facts and applicable sentencing guideline issues to her. (*Id.*) She claims that she was only shown the Stipulation of Facts at the plea hearing. (*Id.*) She claims that Mr. Redman did not explain that the Stipulation of Facts contained her agreement to the amount of drugs charged. (*Id.* at 6.)

Once again, Mr. Redman's affidavit and the guilty plea transcript refutes Petitioner's claims. As noted previously, Mr. Redman states that he researched relevant federal statutory and case law, investigated the factual bases and possible defenses for the charges, discussed with Petitioner her legal options and defenses, and stayed in continuous contact with her. (Docket 59-1.) As previously noted, Mr. Redman states that Petitioner signed the Statement of Facts after reading and discussing it with him. (*Id.* at 44.) Mr. Redman also states that Petitioner decided not to go to trial and knew that by pleading guilty she would face a minimum mandatory sentence of ten years. (*Id.*)

The PF&R accurately recites relevant portions of Petitioner's guilty plea colloquy—much of which is referenced above—that also clearly refute Petitioner's claims. For example, Petitioner stated under oath at her guilty plea hearing that she had read and understood the plea agreement and went over it "word for word, sentence by sentence, piece by piece." (*Id.* at 8.) Petitioner acknowledged that her guilty plea exposed her to a minimum mandatory sentence of ten years. (Docket 59-1 at 18.) Petitioner acknowledged that she understood and discussed with her attorney the Stipulation of Facts, the appeal waiver provision, and the fact that she would not be permitted to withdraw her guilty once it was entered. (*Id.* at 8-9.) Chief Judge Goodwin advised her that she faced a mandatory minimum sentence of ten years if she pleaded guilty. (*Id.* at 18.)

Based on this record, Magistrate Judge Stanley correctly found that Petitioner's assertions in her § 2255 are "palpably incredible and patently frivolous or false." (Docket 67 at 12.) Accordingly, the Court **OVERRULES** Petitioner's objection and **ADOPTS** Magistrate Judge Stanley's findings that: (1) Petitioner fails to demonstrate any extraordinary circumstances justifying discrediting Petitioner's sworn statements during her guilty plea hearing; (2) Petitioner's allegations in her § 2255 motion contradict her sworn statements made during the guilty plea hearing; and (3) that the truth of those sworn statements is conclusively established.

E.    *Fifth Objection*

Petitioner's fifth objection concerns an alleged error by Mr. Redman in the calculation of her sentencing guidelines range. In support of her argument, she tenders the first page of a memorandum that was prepared by a Mary Lou Newberger, a Federal Public Defender, in September 2010.[3]

_____

[3] Petitioner included only the first page of what is a two-page memorandum filed by Ms.
(continued...)

(Docket 71.) The memorandum was submitted in connection with Petitioner's motion for a reduction in sentence under the amendments to the crack cocaine sentencing guidelines. In the memorandum, Ms. Newberger states that Petitioner's sentencing guideline range was improperly calculated when Petitioner was originally sentenced. (*Id.*) Ms. Newberger states that Petitioner's range should have been 97 to 121 months rather than 121 to 151 months. (*Id.*)

Assuming that Petitioner's sentencing guideline range was incorrectly calculated and should have been 97-121 months, Petitioner, as Magistrate Judge Stanley correctly observes and as Ms. Newberger effectively conceded, cannot show any prejudice. Defendant faced a mandatory minimum of 120 months and that is the sentence she ultimately received. Thus, even assuming an error in the sentencing range calculation occurred, any error had no effect on Petitioner's sentence.

Accordingly, the Court **OVERRULES** Petitioner's objections and **ADOPTS** Magistrate Judge Stanley's finding that Petitioner has failed to demonstrate any prejudice to her from her attorney's alleged deficient performance.

*IV. CONCLUSION*

For the reasons noted above, the Court **ADOPTS** the PF&R [Docket 53], **DENIES** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [Docket 46 & 51] and motion to strike the PF&R [Docket 71], **DISMISSES** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence

---

[3](...continued)
Newberger in Petitioner's criminal case (Criminal No. 2:08-cr-000121). (Docket 71.) The second page of the memorandum contains Ms. Newberger's concession that Petitioner was ineligible for a sentencing reduction because Petitioner was sentenced to a mandatory minimum sentence and that neither the alleged initial error in the calculation of the advisory guideline range nor any amendment to the guidelines could change her sentence. (*Id.* at 1-2.)

[Docket 40 & 51], and **STRIKES** this case from the docket of this Court. A separate Judgement Order will enter this day implementing the rulings contained herein.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 17, 2012

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE